1  JAMES F. CLAPP (145814)
   jclapp@sdlaw.com
2  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
3  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
4  DOSTART CLAPP & COVENEY, LLP
   4370 La Jolla Village Drive, Suite 970
5  San Diego, California 92122-1253
   Tel:   858-623-4200
6  Fax:   858-623-4299

7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11
   ROBERT  REED,  individually  and  on        CASE NO. 12-cv-2359 JM BGS
12 behalf of all others similarly situated,
                                                **PLAINTIFF'S MEMORANDUM OF**
13               Plaintiff,                      **POINTS AND AUTHORITIES IN**
                                                **SUPPORT OF MOTION FOR**
14 vs.                                          **PRELIMINARY APPROVAL OF**
                                                **CLASS ACTION SETTLEMENT**
15 1-800  CONTACTS,  INC.,  a  Delaware
   corporation, and DOES 1-50, inclusive,       Date:   August 26, 2013
16                                              Time:   10:00 a.m.
                 Defendants.                    Ctrm:   5D
17                                              Judge:  Hon. Jeffrey T. Miller

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................ 2

    A.     The Parties.................................................................................. 2

    B.     The Litigation............................................................................. 2

III.   SETTLEMENT TERMS ...................................................................... 5

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE
    SETTLEMENT. ..................................................................................... 9

    A.     The Standard For Preliminary Approval..................................... 9

    B.     The Strength of Plaintiff's Claim and the Risk of Further
        Litigation ................................................................................. 11

    C.     The Amount of the Proposed Settlement ................................. 13

    D.     The Extent of Discovery Completed and the Stage of the
        Proceedings ............................................................................. 15

    E.     The Experience and Views of Counsel..................................... 16

    F.     Reaction of the Class to the Settlement ................................... 16

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............. 16

    A.     The Class Meets the Requirements of Rule 23(a) ................................. 16

        1.     Numerosity...................................................................... 16

        2.     Commonality ................................................................... 16

        3.     Typicality ........................................................................ 17

        4.     Adequacy ........................................................................ 17

    B.     The Class Meets the Requirements of Rule 23(b)(3) .......................... 18

VI.    THE PROPOSED CLASS NOTICE IS THE BEST NOTICE
    PRACTICABLE UNDER THE CIRCUMSTANCES ................................. 19

i

VII.   CONCLUSION ............................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Churchill Village, LLC v. General Electric*
    361 F.3d 566 (9th Cir. 2004) ............................................................................. 19

*Franklin v. Kaypro Corp.*
    884 F.2d 1222 (9th Cir. 1989) ............................................................................ 9

*Gautreaux v. Pierce*
    690 F.2d (7th Cir. 1982) ................................................................................... 10

*Gen. Tel. Co. of Southwest v. Falcon*
    457 U.S. 147 (1982) .......................................................................................... 17

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 11, 17, 18

*In re Traffic Executive Association-Eastern Railroads*
    627 F.2d 631 (2d Cir. 1980) .............................................................................. 10

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ............................................................................ 17

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) .......................................................................... 10

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*
    618 F.3d 988 (9th Cir. 2010) .............................................................................. 8

*Officers for Justice v. Civil Service Comm'n*
    688 F.2d 615 (9th Cir. 1982) ............................................................................ 10

*Overton v. Hat World, Inc.*
    2012 U.S. Dist. LEXIS 144116 (E.D. Cal. 2012) ............................................ 19

*Quesada v. Bank of America Investment Svcs.*
    2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013) ................................ 12

*Stewart v. Abraham*
    275 F.3d 220 (3d Cir. 2001) ............................................................................. 16

iii

*Torres v. Nutrisystem, Inc.*
   2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013) ................................... 12

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) ................................................................................. 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
   396 F.3d 96 (2nd Cir. 2005) ............................................................................... 11

*Walters v. Reno*
   145 F.3d 1032 (9th Cir. 1998) ............................................................................ 16

**CALIFORNIA CASES**

*Hale v. Morgan*
   22 Cal. 3d 388 (1978) ......................................................................................... 12

*Kearney v. Salomon Smith Barney, Inc.*
   39 Cal. 4th 95 (2006) .......................................................................................... 18

*Starbucks v. Superior Court*
   168 Cal. App. 4th 1436 (2008) ........................................................................... 12

**FEDERAL STATUTES**

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510. .............................. 12

**CALIFORNIA STATUTES**

California Invasion of Privacy Act, Cal. Penal Code § 630. ........................... passim

**OTHER AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal*
   *Practice & Procedure* § 1778 (2d ed. 1986) ...................................................... 18

*Newberg on Class Actions* (4th ed. 2002) ............................................................ 10

Fed. R. Civ. P. 23 ............................................................................................. passim

*Manual for Complex Litigation, Fourth*, § 21.632 (2004) ................................... 10

# I.     INTRODUCTION

In this class action lawsuit, Plaintiff Robert Reed ("Plaintiff" or "Reed") alleges that Defendant 1-800 Contacts, Inc. ("Defendant") recorded telephone calls made to and received from California residents without their consent, in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. (the "Privacy Act").  The complaint seeks statutory damages on behalf of Plaintiff and other class members.  The parties have reached a settlement which, upon final court approval, will resolve all claims.   Plaintiff now moves for preliminary approval of the Settlement Agreement ("Agreement"), a copy of which is submitted herewith as Exhibit 1 to the Notice of Lodgment of Exhibits ("NOL").

The Agreement is the result of hard-fought litigation and arm's-length settlement negotiations supervised by a former federal district judge.   Before concluding the settlement, the parties served and answered several rounds of written discovery, exchanged voluminous documents, and both Mr. Reed and Defendant's corporate designees were deposed.  Furthermore, after the Court ordered Defendant to produce a list of the names and contact information of potential class members, Plaintiff's counsel obtained questionnaire responses from and/or personally interviewed more than 8,000 individuals on that list.  The Agreement followed a full-day mediation and numerous follow-up negotiation sessions overseen by Layn R. Phillips, a former United States District Judge of the District of Oklahoma and now a partner with Irell & Manella in Newport Beach, California.

Among other terms, the proposed settlement provides that Defendant will pay monetary consideration of Eleven Million Seven Hundred Thousand Dollars ($11,700,000) (the "Settlement Amount").   The funds will be deposited into an interest-bearing account within five court days after preliminary approval.   After Court-approved deductions, all funds will be distributed to Participating Class Members who submit timely and valid claim forms.  The Settlement Amount is entirely non-reversionary.  Any undistributed funds (by reason of settlement checks

1   that remain uncashed 120 days after mailing) will be distributed to a Court-approved

2   cy pres recipient.  The terms of this settlement compare favorably with settlements

3   reached in other class actions alleging violations of the Privacy Act.

4   Accordingly, Plaintiff respectfully requests that the Court enter an order:

5   (1) preliminarily approving the proposed settlement; (2) conditionally certifying the

6   class described herein for settlement purposes; (3) appointing for settlement

7   purposes only the law firm of Dostart Clapp & Coveney, LLP as Class Counsel;

8   (4) appointing for settlement purposes only Robert Reed as the Class

9   Representative; (5) appointing Rust Consulting as the Claims Administrator;

10  (6) approving the proposed forms of Class Notice and Publication Notice and the

11  agreed-upon plan for mailing and publication; and (7) setting a final approval

12  hearing for approximately 120 days after the Court enters preliminary approval.

13  **II.     FACTUAL BACKGROUND**

14  **A.     The Parties.**

15  Defendant is the world's largest seller of contact lenses.  From its offices in

16  Draper, Utah, Defendant's customer service representatives routinely make

17  telephone calls to, and receive telephone calls from, California residents.

18  Mr. Reed, a San Diego resident, alleges that during 2011 and 2012, several of

19  his telephone conversations with Defendant's customer service representatives were

20  recorded without his consent.

21  **B.     The Litigation**

22  Plaintiff commenced this lawsuit on August 15, 2012 by filing a complaint in

23  the San Diego County Superior Court.  Dkt. 1-1.  The Complaint defined the

24  putative class as including "[a]ll natural persons who, while residing in and

25  physically present in the State of California: (1) participated in at least one

26  telephone communication with a live representative of defendants that was recorded

27  by defendants; (2) were not notified by defendants that their telephone

28  communication was being recorded; and (3) are identifiable through defendants'

2

1    records.  Excluded from the class are all employees of defendants, all employees of

2    defendant's counsel, and all employees of plaintiff's counsel."  Dkt. 1-1 at 3-4.

3        Defendant filed its answer in state court on September 26, 2012 (Dkt. 1-2),

4    and removed the action to this Court on September 27, 2012.  Dkt. 1.

5        On October 30, 2012, the parties participated in an Early Neutral Evaluation

6    Conference before Magistrate Judge Skomal.  The case did not settle at the ENE,

7    and the parties thereafter commenced discovery.

8        On December 17, 2012, Magistrate Judge Skomal conducted a Case

9    Management Conference.  Once again, the case did not settle.

10       Following a first round of formal discovery responses and an informal

11   exchange of additional information, the parties agreed to participate in a mediation

12   before Judge Phillips.  The initial mediation session took place on February 22,

13   2013 in Newport Beach, California.  The parties were still unable to resolve the

14   case, so formal discovery continued.

15       On March 1, 2013, the parties filed with Magistrate Judge Skomal a Joint

16   Motion to Determine Discovery Dispute.  Dkt. 15-1.  In that motion, Plaintiff asked

17   the Court to compel Defendant to produce the names, addresses, and telephone

18   numbers of Defendant's customers with respect to whom recorded calls were made

19   from or to telephone numbers with a California area code and as to whom

20   Defendant's business records reflect an order for shipment to a California mailing

21   address, limited to the period August 15, 2011 (the beginning of the one-year

22   limitations period) to September 10, 2012 (the day before Defendant implemented a

23   policy to provide a notice at the outset of each call that the call may be recorded).

24   Plaintiff contended that the names and contact information should be produced to

25   enable him to communicate with potential class members and to provide

26   information necessary to subpoena cell site information from wireless carriers

27   (which would show the physical location at which the potential class members made

28   or received the telephone calls involving Defendant).  Defendant vigorously

3

1  opposed the motion, arguing among other things that Plaintiff lacked standing, that a

2  class could not be certified as a matter of law, and that production of the information

3  would violate the privacy rights of potential class members.  On March 8, 2013,

4  Magistrate Judge Skomal issued an order compelling production of the name,

5  address, and telephone number information.  Dkt. 16.

6      On March 12, 2013, Defendant filed Objections pursuant to Rule 72, asking

7  this Court to reverse Magistrate Judge Skomal's discovery order.  Plaintiff filed his

8  opposition to the Rule 72 Objections on March 19, 2013 (Dkt. 20) and Defendant

9  filed its reply on March 21, 2013.  Dkt. 21.  On March 29, 2013, this Court issued its

10  Order Denying Rule 72 Objections to Discovery Dispute (Dkt. 22) and ordered

11  Defendant to produce the information by April 15, 2013.  That information was

12  produced by Defendant, along with information responsive to other discovery

13  requests showing the date, time, and duration of the subject telephone calls.

14      The Court had previously set June 17, 2013 as the deadline for Plaintiff to file

15  a motion for class certification and for Defendant to file any motion for summary

16  judgment.  Plaintiff continued to gather evidence for his class certification motion

17  by, among other things, pursuing additional written discovery from Defendant and

18  gathering information from potential class members.  In that effort, Plaintiff's

19  counsel received more than 8,000 questionnaire responses from potential class

20  members and spoke with hundreds of potential class members by telephone.

21  Declaration of James F. Clapp ("Clapp Decl.") ¶ 4.  Plaintiff also noticed the Rule

22  30(b)(6) deposition of Defendant.   Defendant likewise pursued its discovery,

23  including taking the deposition of Mr. Reed on April 5, 2013 and noticing other

24  depositions.

25      Plaintiff also undertook further steps to seek discovery of cell site location

26  information from wireless carriers.  In particular, after Defendant produced the

27  telephone call detail information, Defendant argued that Plaintiff would violate the

28  protective order if he served wireless carriers with subpoenas that included the

4

1  telephone numbers, dates, and times of the subject telephone calls.  In response to
2  that argument, Plaintiff filed a Motion to Modify the Protective Order.  Dkt. 25.
3  After full briefing, including an extensive opposition (Dkt. 27), on May 8, 2013,
4  Magistrate Judge Skomal entered the Order Granting Plaintiff's Motion to Modify
5  Protective Order.  Dkt. 33.

6       With the deadline to file motions for class certification and summary
7  judgment rapidly approaching, the parties agreed to reengage in the mediation
8  process.   To that end, on May 10, 2013, the parties submitted a Joint Motion
9  requesting that the motion filing deadline be extended from June 17, 2013 to August
10  19, 2013.  Dkt. 35.  That request was granted.  Dkt. 36.

11       Over the ensuing several weeks, the parties engaged in a sustained mediation
12  process with Judge Phillips.  To bridge the persistent divide between the parties, on
13  May 31, 2013, Judge Phillips made a mediator's recommendation for a monetary
14  settlement amount of $11,700,000, subject to confirmatory deposition discovery and
15  certain other terms and conditions.  Both parties accepted the mediator's proposal.

16       On July 12, 2013, Plaintiff took the depositions of Defendant's corporate
17  designees in Salt Lake City, Utah.   These depositions confirmed information
18  provided by Defendant in interrogatory responses, in its document production, and
19  as part of the mediation process.   Thereafter, the settlement documents were
20  finalized and the Settlement Agreement was signed by the parties on July 23, 2013.

21       At all times, the settlement negotiations, while cordial, were adversarial, non-
22  collusive, and were conducted at arm's-length with the service of an experienced
23  mediator.  Plaintiff submits that the Agreement warrants preliminary approval.

24  **III.   SETTLEMENT TERMS**

25       Material terms of the proposed Settlement Agreement include the following:

26       1.     The parties request that the Court certify a Settlement Class defined as
27  follows: "All natural persons who, while present in California, participated in at
28  least one recorded telephone call with 1-800 Contacts, Inc. between August 15,

5

1  2011 and September 10, 2012 (the "Class Period").   Agreement, Section III.A.
2  (NOL Ex. 1 at 3).

3      2.     The parties request that Robert Reed be appointed as class
4  representative; that Dostart Clapp & Coveney, LLP, be appointed as class counsel;
5  and that Rust Consulting be appointed as Claims Administrator.   Agreement,
6  Sections III.B., III.C., and III.D. (NOL Ex. 1 at 3-4).

7      3.     The monetary consideration consists of $11,700,000 in cash.  No later
8  than five (5) court days following the date the Court enters an order granting
9  preliminary approval, Defendant shall transfer $11,700,000 into an interest-bearing
10 account administered by the Claims Administrator.   Agreement, Section IV.A.
11 (NOL Ex. 1 at 4).

12     4.     The settlement also provides for a change in Defendant's business
13 practices.  For a period of at least three years beginning on the Final Approval Date,
14 Defendant will not record telephone calls that are placed to or received from
15 California area codes unless Defendant gives a notification at the outset of the call
16 that the call may be recorded.  However, if California law were to change in the
17 future such that two-party consent is no longer required, or if the business practice
18 of call recording in the context of customer or consumer call centers is found by the
19 California Legislature or the California Supreme Court to not fall within the
20 California Invasion of Privacy Act, Defendant will be free to conform its practices
21 to then-established law.   Because the settlement is a compromise of disputed
22 allegations and claims, Defendant's agreement to make this business change is
23 expressly for purposes of settlement and not any admission of wrongdoing, fault, or
24 liability with respect to Plaintiff's allegations and claims.  Agreement, Section IV.D.
25 (NOL Ex. 1 at 5).

26     5.     Multiple forms of notice will be provided.   First, the Claims
27 Administrator will mail notice to each Class Member whose name and last-known
28 address is contained in the database to be provided by Defendant, which includes all

unique telephone numbers for California calls that were recorded during the Class Period and, if available to Defendant, the name and address of the Class Member associated with that telephone number.  Agreement, Sections VII.A and VII.B. (NOL Ex. 1 at 6).  Prior to mailing, the Claims Administrator will conduct a national change-of-address search and update the database and mailing list accordingly. Agreement, Section VII.B. (NOL Ex. 1 at 6).  If any settlement documents are returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a skip-trace and/or other customary address search in an attempt to locate a valid address, and if a new address is obtained, re-mail the settlement documents to that address.  *Ibid*.  The mailed notice will describe the terms of the settlement, advise recipients that they have been identified as possible Class Members, advise that they must submit a Claim Form to potentially qualify for a settlement payment, and advise that they can obtain complete details regarding the settlement by accessing the settlement website or calling the Claims Administrator using a toll-free number.  (A copy of the mailed notice form is at NOL Ex. 1 at 20.) Second, the settlement administrator will establish a settlement website on which the administrator will make available the Class Notice, Claim Form, Settlement Agreement, the Plaintiff's Complaint, Defendant's Answer, the order granting preliminary approval of the settlement, and any other materials agreed to by the parties.  Agreement, Section VII.C. (NOL Ex. 1 at 7).  Third, the Claims Administrator will publish notice on three separate occasions in each of the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Diego Union-Tribune*, the *Sacramento Bee*, and the *Fresno Bee*.  Agreement, Section VII.D. (NOL Ex. 1 at 7). The publication notice will advise readers that a proposed class action settlement has been reached, state the deadline for filing claims, opting out, or objecting to the settlement, and state that more information regarding the settlement is available by accessing the settlement website or calling the Claims Administrator using a toll-free number.  (A copy of the Publication Notice at NOL Ex. 1 at 26.)

6.      After mailing of the notice, Class Members will have sixty (60) days to submit a Claim Form, to request exclusion from the class, or to file and serve a written objection to the settlement.  Agreement, Sections VII.F, VII.G., and VII.H. (NOL Ex. 1 at 7-8).  The Claims Administrator will validate Claim Forms by comparing the name and telephone number information on the Claim Form against the names and telephone numbers in the database of telephone calls to be provided by Defendant.  Agreement, Section VII.F. (NOL Ex. 1 at 7).  Class Members who complete and timely return a Claim Form that is validated by the Claims Administrator will constitute the Participating Class Members.

7.      In advance of the deadline for filing objections, pursuant to *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), Class Counsel will file a motion requesting an award of attorneys' fees equal to twenty-five percent (25%) of the monetary settlement amount, plus reimbursement of actual litigation expenses not to exceed $150,000.  Agreement, Section V. (NOL Ex. 1 at 5).  That motion will also request a service payment to Robert Reed not to exceed $10,000.  Agreement, Section VI. (NOL Ex. 1 at 5-6). These amounts are all subject to Court approval.  Defendant will take no position regarding these requests.

8.      Following final court approval and occurrence of the Effective Date, each Participating Class Member shall be entitled to receive a pro-rata portion of the Net Settlement Amount (the amount available for distribution after payment of settlement costs including attorneys' fees, litigation expenses, a class representative enhancement award, and expenses of administration).  Each Participating Class Member will receive an equal share of the Net Settlement Amount, *i.e.*, a payment equal to the Net Settlement Amount divided by the number of Participating Class Members.  Agreement, Section VIII.A. (NOL Ex. 1 at 9).  Any funds not distributed to Participating Class Members (by reason of checks that remain uncashed 120 days

after mailing) will be distributed to a court-approved cy pres recipient.[1]  Agreement, Section VIII.B. (NOL Ex. 1 at 9).

9.     Provided that the Effective Date occurs, Class Members who do not timely request exclusion release and discharge Defendant from any and all claims that were (or could have been) alleged in Plaintiff's complaint arising out of facts alleged in the complaint that took place during the Class Period.   Agreement, Section X (NOL Ex. 1 at 10).

## IV.     THE     COURT     SHOULD     PRELIMINARILY     APPROVE     THE SETTLEMENT.

### A.     The Standard For Preliminary Approval

The policy of the federal courts is to encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).   "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. … The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Ibid*.

The district court must approve any class action settlement.  Fed. R. Civ. P. 23(e).   Court approval of a class action settlement is a two-step process.   First, counsel submit the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation.   If the preliminary evaluation of the

---

[1] Any settlement checks to Participating Class Members that are not cashed within 120 days of mailing by the Claims Administrator will be void.  Agreement, Section VIII.B.  Any portion of the Settlement Amount that remains unpaid at the end of 120 days will be paid to a cy pres recipient proposed by the parties and approved by the Court.  *Ibid*.  Plaintiff has proposed to Defendant that Consumer Federation of California be designated as the cy pres recipient. Consumer Federal of California is a non-profit organization that advocates on behalf of California consumers on a variety of issues, specifically including privacy protection.   Information about Consumer   Federation   of   California   is   available   on   its   website, http://consumercal.org.  Defendant has not yet responded to that proposal.   The parties will notify the Court when they are ready to make a formal proposal in this regard.

MEMO. OF P. & A. IN SUPPORT OF MOTION FOR PRELIMINARY                    12-cv-2359 JM BGS
APPROVAL OF CLASS ACTION SETTLEMENT

1  settlement does not disclose a basis to doubt its fairness or other obvious

2  deficiencies, the court directs that notice be given to the class and sets a final

3  fairness hearing. *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

4       The "universal standard" in evaluating the fairness of a settlement is whether

5  the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice*

6  *v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion

7  upon what is otherwise a private consensual agreement negotiated between the

8  parties to a lawsuit must be limited to the extent necessary to reach a reasoned

9  judgment that the agreement is not the product of fraud or overreaching by, or

10 collusion between, the negotiating parties, and that the settlement, taken as a whole,

11 is fair, reasonable and adequate to all concerned." *Ibid*.

12       As the Ninth Circuit has recognized, "the very essence of a settlement is

13 compromise." *Id*. at 624. "[I]t is the very uncertainty of outcome in litigation and

14 avoidance of wasteful and expensive litigation that induce consensual settlements.

15 The proposed settlement is not to be judged against a hypothetical or speculative

16 measure of what might have been achieved by the negotiators." *Linney v. Cellular*

17 *Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), citing *Officers for Justice*,

18 688 F.2d at 625. Even if the amount of a proposed monetary settlement is a fraction

19 of the potential recovery, that does not necessarily mean the settlement is

20 inadequate. *Linney*, 151 F.3d at 1242.

21       Preliminary approval should be granted if the proposed settlement falls

22 "within the range of possible final approval." *Gautreaux v. Pierce*, 690 F.2d at 616,

23 621 n.3 (7th Cir. 1982); Conte & Newberg, *Newberg on Class Actions* (4th ed.

24 2002), § 11.25 at pp. 38-39. Stated another way, preliminary approval is "a

25 determination that there is what might be termed 'probable cause' to submit the

26 proposal to class members and hold a full-scale hearing as to its fairness." *In re*

27 *Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

28

MEMO. OF P. & A. IN SUPPORT OF MOTION FOR PRELIMINARY                    12-cv-2359 JM BGS
APPROVAL OF CLASS ACTION SETTLEMENT

A proposed settlement is presumed to be fair when (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. The proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by a well-respected former federal district judge acting as the independent mediator (Clapp Decl. ¶ 5); the class is represented by experienced counsel (*id.*, ¶ 2); and the parties exchanged a significant amount of information, both formally and informally, so that Plaintiff and his counsel are able to make an informed recommendation about the settlement (*id.*, ¶ 4). Thus, the settlement is presumed to be fair.

In evaluating the fairness of a settlement, the district court should weigh the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative degree of importance to be attached to any particular factor depends upon the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Here, the pertinent factors weigh in favor of approving the settlement.

## B. The Strength of Plaintiff's Claim and the Risk of Further Litigation

Defendant has raised numerous defenses to the class claims. On the merits, Defendant has argued, *inter alia*, that telephone calls to Defendant's business could not give rise to an objectively reasonable expectation that the calls would not be recorded, so that the calls at issue could not have been "confidential

11

1   communications" as required by Penal Code section 632; that customers consented

2   to the recording, either expressly or impliedly; that the cause of action is preempted

3   by federal laws and regulations, including the Electronic Communications Privacy

4   Act, 18 U.S.C. §§ 2510 *et seq.*; that Defendant's use of Voice over Internet Protocol

5   ("VoIP") technology precludes liability; and that an award of aggregated statutory

6   damages would violate the Excessive Fines and Due Process provisions of the U.S.

7   and/or California Constitutions.[2]   Based on these arguments, Defendant contends

8   Plaintiff would lose on the merits.

9          Regarding class certification, Defendant has argued that a proper class of

10  consumers is not ascertainable; that individual issues would predominate over

11  common issues; and that a class action would not be superior because, among other

12  reasons, an award of aggregated statutory damages would be disproportionate to the

13  harm.   Based on these arguments, Defendant contends Plaintiff would lose a

14  contested class certification motion.   Indeed, in the call-recording context, two

15  district courts have denied motions for class certification.   *See, e.g.*, *Quesada v.*

16  *Bank of America Investment Svcs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb.

17  19, 2013) (common issues did not predominate in view of evidence that defendant's

18  policy was to notify customers of the recording and that such warnings were in fact

19  given on many occasions); *Torres v. Nutrisystem, Inc.*, 2013 U.S. Dist. LEXIS

20  66444 (C.D. Cal. Apr. 8, 2013) (motion for class certification denied due to, *inter*

21  _____

22  [2] Defendant has argued that the statutory damage amount of $5,000 per recorded call
    is unconstitutionally excessive given that Plaintiff has not alleged any quantifiable

23  out-of-pocket losses.   In *Hale v. Morgan*, 22 Cal. 3d 388, 399-405 (1978), in the
    context of a landlord-tenant dispute, the California Supreme Court held that a

24  statutory penalty of $100 per day was unconstitutional as applied in the particular
    circumstances because the statute gave the court no discretion to consider

25  "moderating influences" such as the wealth of the defendant or its degree of
    culpability.   Other courts have relied on *Hale* to limit a plaintiff's ability to recover

26  statutory damages in certain circumstances.   *See, e.g., Starbucks v. Superior Court*,
    168 Cal. App. 4th 1436, 1450-52 (2008) (narrowly interpreting the Labor Code

27  statutory damage provision at issue in that case to require proof of actual injury).

28

MEMO. OF P. & A. IN SUPPORT OF MOTION FOR PRELIMINARY                12-cv-2359 JM BGS
APPROVAL OF CLASS ACTION SETTLEMENT

*alia*, differences with respect to the circumstances under which class members may have received, or bypassed, an automated notification that calls are recorded). Although Plaintiff believes those cases are distinguishable from the instant case, there is no certainty that Plaintiff would win a contested motion.

Apart from risks associated with class certification and trial, if the litigation were continued, the trial process itself and subsequent appeals would take years, with very substantial expenditures of time and resources by the parties and the Court, and without any guarantee of recovery for class members. The proposed settlement eliminates all litigation risks and ensures that the class members receive some compensation for their claims.

### C.   The Amount of the Proposed Settlement

Compared to settlements in other Privacy Act cases, class members in the instant case will receive a recovery that is comparable, if not superior. There are approximately 81,706 individual class members who can be identified from Defendant's records and to whom individual notice will be mailed.[3]  In addition, there are 70,493 unique telephone numbers (associated with an unknown number of individuals) for whom Defendant does not have name or address information.[4] Combining those categories, and assuming for this purpose that each unique telephone number is associated with a different class member, the maximum number of potential class members is 152,199.  The total number of recorded calls involving all potential class members (both known and unknown) is approximately 300,000.

---

[3] This number includes 42,704 customers whose telephone calls were recorded in connection with orders placed over the telephone.  In addition, Defendant's records identify another 39,002 unique telephone numbers that are associated with orders placed over the Internet.  The actual number of class members is likely to be somewhat lower than the number of unique telephone numbers due to the possibility that some individuals may have made or received calls on more than one telephone.

[4] These include an unknown number of prank calls, outbound calls that were picked up by an answering machine, outbound and inbound calls made to a wrong number, or calls simply to check on price or availability that did not lead to an order.

When applied to the estimated number of identifiable class members (81,706), the settlement amount equates to approximately $143.19 each.   When applied to the maximum number of potential class members (152,199), the settlement amount equates to approximately $76.87 each.   These figures compare favorably to class action settlements in four other Privacy Act cases for which information is available.

First, in *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal.), the settlement involved 40,000 class members and gave them the option of selecting a six-month extension of the BMW Assist basic safety plan (valued by the parties at $100) or making a claim for *up to* $50 against a $300,000 settlement fund.   *See* Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement, *Skuro v. BMW, supra*, at 2, 6 (NOL Ex. 2 at 38, 42).   Therefore, depending on how many class members opted for a monetary recovery, the actual payment amount was somewhere between the stated maximum of $50 and a minimum of $7.50.

Second, in *Marenco v. Visa Inc.*, Case No. 10-8022 DMG (VBKx) (C.D. Cal.), the court approved an $18,000,000 settlement for a class that numbered approximately 600,000 individuals.   *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, *Marenco v. Visa, supra*, at 3 (NOL Ex. 3 at 70).   Thus, the monetary recovery in *Marenco* was approximately $30.00 per class member.[5]

Third, in *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (JCx) (C.D. Cal.), the case settled for $9,480,000 on behalf of a class estimated to include more than 1,000,000 class members.   *See* Renewed Notice of Motion and

---

[5] The *Marenco* settlement, as well as the *Batmanghelich v. Sirius* and *Greenberg v. E-Trade* settlements discussed next, included class members located in multiple states.   In each of those cases, California class members were paid more than class members located in the other states.

MEMO. OF P. & A. IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

12-cv-2359 JM BGS

1  Unopposed Motion for Preliminary Approval of Class Action Settlement,
2  *Batmanghelich v. Sirius*, *supra*, at 5, 9 (NOL Ex. 4 at 105, 109).    Thus, in
3  *Batmanghelich*, the average monetary recovery was approximately $9.48 per class
4  member.

5      Fourth, in *Greenberg v. E-Trade Financial Corporation*, Los Angeles County
6  Superior Court, Case No. BC360152, the case settled for $7.5 million.  The number
7  of actual class members was not stated, but the class potentially could have included
8  as many as 1,000,000 customers.  *See* Notice of Motion and Motion for Preliminary
9  Approval of Class Action Settlement *etc*. and Memorandum of Points and
10 Authorities in Support Thereof, *Greenberg v. E-Trade*, *supra*, at 1, 10 (NOL Ex. 5 at
11 131, 140).   Thus, although the monetary recovery per class member cannot be
12 quantified with precision (due to lack of information about the actual number of
13 class members), it could have been as low as $7.50.

14     Here, the proposed settlement of $11,700,000 is substantial in absolute terms
15 and, at approximately $143.19 per known class member (or $76.87 per potential
16 class member), it compares very favorably with class settlements that have been
17 approved in similar cases.  Of course, to the extent the claims rate is less than 100%,
18 the amount allocable to each Participating Class Member will be higher.

19     **D.    The Extent of Discovery Completed and the Stage of the**
20         **Proceedings**

21     As summarized above in Section II.B, discovery in this action was extensive
22 and hard-fought.   Based on the discovery that was completed, Plaintiff and his
23 counsel are sufficiently familiar with the facts of this case and the applicable law to
24 make an informed judgment as to the fairness of the settlement.  Clapp Decl. ¶ 4.
25 / / /
26 / / /
27 / / /
28 / / /

15

**E.      The Experience and Views of Counsel**

Class counsel, the law firm of Dostart Clapp & Coveney, LLP, has been appointed as lead or co-lead class counsel in more than 50 certified class actions. Class counsel believes the settlement is fair, reasonable, and in the best interests of the class members.  Clapp Decl. ¶¶ 2-3.

**F.      Reaction of the Class to the Settlement**

Class members will have an opportunity to object or opt-out of the settlement. Class Counsel will report on the reaction of the class members at the final approval hearing.

**V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

**A.      The Class Meets the Requirements of Rule 23(a)**

A court should certify a class if the following prerequisites are met: "(1) the class is too numerous, making joinder of the parties impracticable; (2) common questions of law or fact exist among the class members; (3) the claims of the class representatives are typical of the claims of the class; and (4) the class representatives will adequately represent the interest of the class."  *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998).  Each of these requirements is met in the instant case.

**1.      Numerosity**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if a class exceeds 40 members, the numerosity requirement is satisfied.  Here, the class consists of more than 80,000 individuals who can be identified from Defendant's records, plus additional unidentified individuals.  Clapp Decl. ¶ 6.

**2.      Commonality**

The commonality requirement serves two purposes: (1) ensuring that absentee members are fairly and adequately represented and (2) ensuring practical and efficient case management.  *Walters*, 145 F.3d at 1045, citing *Gen. Tel. Co. of*

16

1  *Southwest v. Falcon*, 457 U.S. 147 (1982).  The standard under Rule 23(a)(2) is

2  "permissive."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In

3  this case, all class members were allegedly the subject of undisclosed recording by

4  Defendant.  Thus, the class members' claims are legally and factually similar.  Clapp

5  Decl. ¶ 6.

6         **3.**    **Typicality**

7      A class representative's claims are typical if they are "reasonably co-extensive

8  with those of absent class members; they need not be substantially identical."

9  *Hanlon*, 150 F.3d at 1020.  "The commonality and typicality requirements of Rule

10  23(a) tend to merge.  Both serve as guideposts for determining whether under the

11  particular circumstances maintenance of a class action is economical and whether

12  the named plaintiff's claim and the class claims are so interrelated that the interests

13  of the class members will be fairly and adequately protected in their absence."

14  *General Tel. Co. of Southwest*, 457 U.S. at 157 n.13.

15      Here, Plaintiff's claim is typical.  Like the other class members, Plaintiff's

16  claim is that his telephone conversations with Defendant's customer service

17  representatives were recorded without his consent.  Clapp Decl. ¶ 6.

18          **4.**    **Adequacy**

19      "[T]wo criteria for determining the adequacy of representation have been

20  recognized.  First, the named representatives must appear able to prosecute the

21  action vigorously through qualified counsel, and second, the representatives must

22  not have antagonistic or conflicting interests with the unnamed members of the

23  class."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

24      The adequacy requirement is met here.  Plaintiff has no interests that are

25  antagonistic to those of the other class members and has retained counsel who are

26  experienced in class action litigation.  Clapp Decl. ¶¶ 2, 6.

27  / / /

28  / / /

1

**B.    The Class Meets the Requirements of Rule 23(b)(3)**

2    To certify a class under Fed. R. Civ. P. 23(b)(3), the court must find that "the

3 questions of law or fact common to the members of the class predominate over any

4 questions affecting only individual members, and that a class action is superior to

5 other available methods for the fair and efficient adjudication of the controversy."

6    The predominance inquiry tests whether proposed class is "sufficiently

7 cohesive to warrant adjudication by representation." *Amchem Products*, 521 U.S. at

8 623.  "When common questions present a significant aspect of the case and they can

9 be resolved for all members of the class in a single adjudication, there is clear

10 justification for handling the dispute on a representative rather than on an individual

11 basis."  7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal*

12 *Practice & Procedure* § 1778 (2d ed. 1986).

13    Here, Plaintiff contends that the predominant factual and legal issues include

14 whether Defendant recorded telephone conversations without providing a notice at

15 the outset of the call, and whether such calls gave rise to an objectively reasonable

16 expectation that the calls would not be recorded.  *See Kearney v. Salomon Smith*

17 *Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (holding that "[a] business that adequately

18 advises all parties to a telephone call, at the outset of the conversation, of its intent

19 to record the call would not violate the provision.").   Here, Defendant had

20 standardized procedures with respect to handling and recording telephone calls, and

21 did not institute a policy to give notice that calls are recorded until after the lawsuit

22 was filed.  Clapp Decl. ¶ 6.  Thus, it is appropriate to resolve these claims on a

23 classwide basis.

24    The superiority prong under Rule 23(b)(3) involves a comparison of the

25 potential alternative mechanisms for resolving the dispute.  *Hanlon*, 150 F.3d at

26 1023 (citation omitted).  In this case, the only alternative to a class action would be

27 thousands of individual actions, which would be neither practical nor efficient.

28 Such individual litigation would consume scarce judicial resources, would impose

18

1   substantial additional burdens and expense on the litigants, and would present a risk

2   of inconsistent rulings.  Accordingly, a class action is superior.

3   **VI.   THE PROPOSED CLASS NOTICE IS THE BEST NOTICE**
    **PRACTICABLE UNDER THE CIRCUMSTANCES**

4

5        Pursuant to Fed. R. Civ. P. 23(e)(1), "[t]he court must direct notice in a

6   reasonable manner to all class members who would be bound by the proposal."

7   Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[t]he notice must clearly and concisely

8   state in plain, easily understood language:  (i) the nature of the action; (ii) the

9   definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

10  class member may enter an appearance through an attorney if the member so

11  desires; (v) that the court will exclude from the class any member who requests

12  exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding

13  effect of a class judgment on members under Rule 23(c)(3)."  Notice is satisfactory

14  if it "generally describes the terms of the settlement in sufficient detail to alert those

15  with adverse viewpoints to investigate and come forward and be heard." *Churchill*

16  *Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

17       Here, the proposed notice (NOL Ex. 1 at 20) describes the litigation, the terms

18  of the settlement, and the class members' options with regard to the settlement.  The

19  Claims Administrator will mail the notice via first-class mail, postage prepaid, to the

20  last-known addresses of the class members for whom Defendant's records reflect

21  such information, as updated through the U.S. Postal Service's NCOA database.

22  This method meets the requirements of due process.  *Overton v. Hat World, Inc.*,

23  2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) (noting that individual notice

24  to class members' last-known address met the requirements of due process).

25       In addition, to ensure that notice reaches as many potential class members as

26  possible, the Agreement also provides for Publication Notice.  Agreement, Section

27  VII.D.  The Publication Notice (NOL Ex. 1 at 26) will be published three times in

28  each of the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Diego Union-*

19

1  *Tribune*, the *Sacramento Bee* and the *Fresno Bee*.  The Publication Notice briefly

2  describes the nature of the case, states the deadline for filing claims, opting out, or

3  objecting to the settlement, and advises readers that they can obtain more

4  information about the settlement by accessing the settlement website or by calling

5  the settlement administrator using a toll-free number.  Accordingly, the proposed

6  class notice and the plan for its circulation comply with due process and Rule 23.

7  **VII.   CONCLUSION**

8          Based on the foregoing, Plaintiff respectfully requests that the Court enter an

9  order substantially in the form of the [Proposed] Order Granting Preliminary

10 Approval of Class Action Settlement submitted herewith.  Plaintiff also requests that

11 the Court set a final approval hearing for approximately 120 days after the Court

12 enters its preliminary approval order.

13 Dated: July 26, 2013                    DOSTART CLAPP & COVENEY, LLP

14

15                                        /s/ James T. Hannink

16                                        JAMES T. HANNINK
                                          Attorneys for Plaintiff

17 566470.1

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF P. & A. IN SUPPORT OF MOTION FOR PRELIMINARY                    12-cv-2359 JM BGS
APPROVAL OF CLASS ACTION SETTLEMENT