1 JAMES F. CLAPP (145814)
jclapp@sdlaw.com
2 JAMES T. HANNINK (131747)
jhannink@sdlaw.com
3 ZACH P. DOSTART (255071)
zdostart@sdlaw.com
4 DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
5 San Diego, California 92122-1253
Tel: 858-623-4200
6 Fax: 858-623-4299

7 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT REED, individually and on behalf of all others similarly situated, Plaintiffs, vs. 1-800 CONTACTS, INC., a Delaware corporation, and DOES 1-50, inclusive, Defendants. | CASE NO. 12-cv-2359 JM BGS **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** Date: December 16, 2013 Time: 10:00 a.m. Crtrm.: 5D Judge: Hon. Jeffrey T. Miller |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................... 1

III. SUMMARY OF CLAIMS ADMINISTRATION TO DATE .......................... 4

IV. THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL ................ 6

    A. The Strength of Plaintiff's Case. ........................................................... 7

    B. The Risk, Expense, Complexity and Likely Duration of Further Litigation. ............................................................................................... 8

    C. The Risk of Maintaining Class Action Status Throughout the Trial. ....................................................................................................... 9

    D. The Amount Offered in Settlement. ..................................................... 9

    E. The Extent of Discovery Completed and the Stage of the Proceedings. ......................................................................................... 10

    F. The Experience and Views of Counsel. ............................................. 11

    G. The Presence of a Governmental Participant. .................................... 11

    H. The Reaction of the Class to the Settlement. ..................................... 11

    I. There Was No Collusion Between the Parties. ................................... 12

V. THE COURT SHOULD APPROVE SAN FRANCISCO CONSUMER ACTION AS THE CY PRES RECIPIENT ...................................................... 12

VI. CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2003) .................................................................................. 12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................ 6, 7

*Garner v. State Farm Mutual Auto Insurance Co.*,
   2010 U.S. Dist Lexis 49477 (N.D. Cal. April 22, 2011) ................................. 6, 7, 8

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................... 6

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 11

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................................... 6

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................... 7

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ................................................................................... 13

*Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*,
   79 F.R.D. 571 (E.D. Pa. 1978) ................................................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2nd Cir. 2005) ...................................................................................... 7

**Federal Statutes**

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ........................ 8

**California Statutes**

Privacy Act, Cal. Penal Code § 630 *et seq.* ...................................................... passim

ii
MEMO. OF P. & A. IN SUPPORT OF MOTION FOR FINAL APPROVAL          12-cv-2359 JM BGS

I.  INTRODUCTION

Robert Reed ("Plaintiff") and Class Counsel, the law firm of Dostart Clapp & Coveney, LLP, successfully negotiated an $11.7 million, non-reversionary settlement on behalf of a class of California consumers who allege that their telephone calls were secretly recorded by defendant 1-800 Contacts, Inc. ("Defendant") in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq*.  Following this Court's preliminary approval of the settlement and the dissemination of class notice, class members have now had the opportunity to file claims to participate in the settlement, to opt out, or to object to the settlement.  The response of class members demonstrates strong support for the settlement.  To date, the Claims Administrator has received 16,506 claim forms.[1] Measured against the 99,884 individuals to whom notice was mailed, this represents a claims rate of approximately 16.5%.[2]  Only 48 class members requested exclusion from the settlement.  **Zero** objections were filed.  Based on all pertinent factors, the instant settlement should be given final approval.

II.  FACTUAL BACKGROUND

Plaintiff filed this lawsuit in the San Diego Superior Court on August 15, 2012.  Dkt. 1-1.  Defendant filed its answer in state court on September 26, 2012 (Dkt. 1-2) and removed the action to this Court on September 27, 2012.  Dkt. 1.

---

[1] This figure represents the total number of claim forms received by the Claims Administrator through November 15, 2013.  The Claims Administrator is in the process of determining the number of valid claims.  Due in part to the filing of some duplicate claim forms (such as forms sent in by both fax and mail), it is likely that the number of valid claims will be somewhat lower.

[2] As explained in the Motion for Preliminary Approval (Dkt. 40-1), publication notice was given for the benefit of other class members who called from 70,493 unique telephone numbers and for whom Defendant does not have name or address information.  Assuming that each of those unique telephone numbers was associated with one potential class member, the total number of potential class members would be 170,377.  Measured against that number (and ignoring the moment the likelihood that some claim forms are duplicates or otherwise invalid, which the Claims Administrator will determine), the claims rate would be approximately 9.7%.

1    On October 30, 2012, the parties participated in an Early Neutral Evaluation Conference before Magistrate Judge Bernard G. Skomal. The case did not settle at the ENE, and the parties thereafter commenced formal discovery. On December 17, 2012, Magistrate Judge Skomal conducted a Case Management Conference. Dkt. 9.

Following a first round of written discovery and an informal exchange of additional information, the parties agreed to participate in mediation before the Hon. Layn R. Phillips, a retired federal district court judge. The initial mediation session took place on February 22, 2013 in Newport Beach, California. The parties were unable to resolve the case. Thereafter, the parties proceeded with additional discovery. Declaration of James T. Hannink in Support of Motion for Final Approval ("Hannink Decl.") ¶ 5.

As other discovery was moving forward, on March 1, 2013, the parties filed with Magistrate Judge Skomal a Joint Motion to Determine Discovery Dispute. Dkt. 15-1. In that motion, Plaintiff asked the Court to compel Defendant to produce the names and contact information of the putative class members whose calls were recorded and who had placed orders with Defendant. Defendant vigorously opposed the motion, arguing among other things that Plaintiff lacked standing, that a class could not be certified as a matter of law, and that production of the information would violate the privacy rights of potential class members. On March 8, 2013, Magistrate Judge Skomal issued an order compelling production of the names and contact information. Dkt. 16.

On March 12, 2013, Defendant objected to Magistrate Judge Skomal's order pursuant to Fed. R. Civ. P. 72. Plaintiff filed his opposition on March 19, 2013 (Dkt. 20), and Defendant filed its reply on March 21, 2013. Dkt. 21. On March 29, 2013, this Court overruled the objection and ordered Defendant to produce the names and contact information by April 15, 2013. Dkt. 22. Meanwhile, Defendant took the deposition of Plaintiff on April 5, 2013. Hannik Decl. ¶ 4.

1    After receiving the names and contact information, Class Counsel sent a letter and questionnaire to more than 40,000 potential class members. Class Counsel received more than 8,000 questionnaire responses and spoke with hundreds of class members by telephone. Hannink Decl. ¶ 8.

Although the initial mediation session had been unsuccessful, in May 2013, the parties agreed to resume settlement discussions. On May 10, 2013, the parties submitted a Joint Motion requesting that the motion filing deadline be extended from June 17, 2013 to August 19, 2013. Dkt. 35. The Court granted that request. Dkt. 36. During the ensuing several weeks, the parties engaged in extensive mediation discussions facilitated by Judge Phillips. Although the negotiations were cordial, at all times, they were non-collusive and conducted at arms-length. Ultimately, Judge Phillips made a mediator's proposal in the amount of $11.7 million, which both sides accepted, subject to completion of Defendant's Rule 30(b)(6) deposition. Hannink Decl. ¶ 9. That deposition was taken on July 12, 2013. Hannink Decl. ¶ 4. The Settlement Agreement was signed on July 23, 2013. Dkt. 40-4. In addition to the monetary payment, the settlement requires that, for a period of at least three years beginning on the Final Approval Date (assuming there is no change in California law), Defendant will not record telephone calls that are placed to or received from California area codes unless Defendant gives a warning at the outset of the call that the call may be recorded. Dkt. 40-4 at 6 (Agreement, Section IV.D.).

On August 29, 2013, the Court preliminarily approved the settlement and conditionally certified for settlement purposes a class defined as follows: "All natural persons who, while present in California, participated in at least one recorded telephone call with 1-800 Contacts, Inc. between August 15, 2011 and September 10, 2012 (the 'Class Period')." Dkt. 45. The Court also appointed Plaintiff as the class representative, Dostart Clapp & Coveney, LLP as Class Counsel, and Rust Consulting ("Rust") as Claims Administrator. Dkt. 45.

### III. SUMMARY OF CLAIMS ADMINISTRATION TO DATE

The steps taken thus far to implement the settlement, and further steps that will be taken upon final approval, are as follows:

1. On September 3, 2013, Defendant transferred $11,700,000 into an interest-bearing account administered by the Claims Administrator. Declaration of Daniel Coggeshall ("Coggeshall Decl.") ¶ 2.

2. Multiple forms of notice have been provided to the class. First, the Claims Administrator mailed the class notice and claim form to each class member whose name and last-known address appeared in Defendant's business records. Prior to the mailing, the Claims Administrator ran the addresses through the U.S. Postal Service's National Change of Address Database, and for any mailers that were returned as undeliverable, the Claims Administrator performed a skip-trace. In all, the Claims Administrator mailed 104,000 class notices. Coggeshall Decl. ¶¶ 3-6. Second, the Claims Administrator published the class notice on three separate occasions in each of the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*. Coggeshall Decl. ¶ 7. Third, the Claims Administrator established a website, www.1800ContactsSettlement.com, where the class notice, Settlement Agreement, and other documents were made available. Coggeshall Decl. ¶ 8.

3. The Claims Administrator also established a toll-free telephone number for this settlement, 1-888-261-9752, which became active on September 13, 2013. When calling the toll-free telephone number, the caller was able to listen to a pre-recorded message containing pertinent information regarding the action or request a copy of the Class Notice. Coggeshall Decl. ¶ 9.

4. The Claims Administrator also established procedures to receive claim forms. To that end, the Claims Administrator established a toll-free facsimile number (1-855-263-3449) to enable Class Members to submit their Claim Forms via fax. Coggeshall Decl. ¶ 10. The Claims Administrator also leases and maintains a

case-dedicated Post Office box (P.O. Box 3041, Faribault, MN 55021-2641) for the receipt of claim forms and other written communications. Coggeshall Decl. ¶ 11.

5. On November 4, 2013, as authorized by the Settlement Agreement, Class Counsel filed a noticed motion requesting an award of attorneys' fees in the amount of $2,925,000, reimbursement of out-of-pocket litigation expenses in the amount of $106,111.81, and a service payment to Plaintiff in the amount of $10,000, all payable from the common fund. Dkt. 48-1. No objection or opposition has been filed by any class member.

6. The deadline for filing claims, objecting to the settlement, or opting out was November 14, 2013. Dkt. 47. As of November 15, 2013, the Claims Administrator has received 16,506 claim forms to be processed.[3] Coggeshall Decl. ¶ 12. The Claims Administrator has also received 48 requests for exclusion ("opt outs"). Coggeshall Decl. ¶ 13. No objections have been filed with the Court or received by Class Counsel. Hannink Decl. ¶ 11.

7. Based on the absence of objections, the "Effective Date" of the settlement will be the date on which the Court enters an order granting final approval. See Dkt. 40-4 at 2 (Agreement, Section II.A.4.a.).

8. Within ten (10) court days following the Effective Date, the Claims Administrator will pay the attorneys' fees, litigation expenses, and service payment awarded by the Court, and will also mail each participating class member a check representing the person's pro-rata share of the Net Settlement Amount. Dkt. 40-4 at 9 (Agreement, Section VIII.).

---

[3] This number overstates to some degree the number of valid claims because some class members submitted multiple claim forms (e.g., if a class member submitted a claim form by fax and a duplicate claim form by mail, that is counted as two claim forms). The Claims Administrator is in the process of eliminating duplicate claim forms.

1  9. Provided that the parties have performed all of their obligations under
2 the settlement, within fifteen (15) court days following the Effective Date, the
3 parties will file a proposed Judgment terminating the action with prejudice. Dkt. 40-
4 4 at 11 (Agreement, Section IX).
5  10. If any settlement checks are uncashed after 120 days, the funds will be
6 distributed to a Court-approved *cy pres* recipient. Dkt. 40-4 at 10 (Agreement,
7 Section VIII.B.). As explained below in Section V, the proposed *cy pres* recipient is
8 San Francisco Consumer Action, which is a California non-profit corporation and a
9 public charity under Internal Revenue Code § 501(c)(3) focused on protecting the
10 rights of consumers in the areas of banking and credit, housing, privacy,
11 telecommunications, and insurance. Hannink Decl. ¶ 12.

12 IV. <u>THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL</u>

13  There is a strong judicial policy favoring settlements, particularly in complex
14 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.
15 1992). The "universal standard" in evaluating the fairness of a settlement is whether
16 the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice*
17 *v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Ninth Circuit
18 has recognized, "the very essence of a settlement is compromise." *Id.* at 624. "[I]t
19 is the very uncertainty of outcome in litigation and avoidance of wasteful and
20 expensive litigation that induce consensual settlements. The proposed settlement is
21 not to be judged against a hypothetical or speculative measure of what might have
22 been achieved by the negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d
23 1234, 1242 (9th Cir. 1998); *Garner v. State Farm Mutual Auto Insurance Co.*, 2010
24 U.S. Dist Lexis 49477 (N.D. Cal. April 22, 2011).

25  A settlement is presumed to be fair when: (1) it is reached through arms-
26 length negotiations; (2) the class is represented by experienced counsel; and (3) the
27 parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A.*
28 *Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005); *Garner* at *35 ("Where a settlement is the

1. product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.") Here, all of the factors giving rise to a presumption of fairness exist. First, the Settlement was the product of arms-length, non-collusive negotiations, facilitated by a well-respected mediator with judicial experience. Hannink Decl. ¶¶ 5-9. Second, Plaintiff is represented by experienced counsel. Hannink Decl. ¶¶ 2-3. Third, before reaching the settlement, the parties exchanged a significant amount of information and took extensive discovery, both formally and informally. Hannink Decl. ¶¶ 5-9.

In evaluating the fairness of a settlement, the Court should consider "some or all" of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Garner*, *supra*, 2010 U.S. Dist. Lexis 49477 at *23. In addition, the Court should satisfy itself that the settlement was not the product of collusion. *City of Seattle*, 955 F.2d at 1290; *Garner* at *35-36. These factors favor approval of the instant settlement.

A. The Strength of Plaintiff's Case.

"The first fairness factor addresses plaintiffs' likelihood of success on the merits and the range of possible recovery." *Garner* at *23-24. In weighing this factor, the Court should not attempt to reach any final conclusions about the contested issues in the case. Rather, the Court may presume that, through negotiation, the parties, counsel, and the mediator arrived at a reasonable range of settlement in light of the likelihood of recovery. *Garner* at *24.

Here, Defendant raised numerous defenses on the merits. Defendant has argued, *inter alia*, that telephone calls to a call center could not give rise to an objectively reasonable expectation that the calls would not be recorded, so that the calls at issue could not have been "confidential communications" within the meaning of Penal Code § 632; that customers consented to the recording, either expressly or implicitly; that the cause of action is preempted by federal laws and regulations, including the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*; and that an award of aggregated statutory damages would violate the U.S. and/or California Constitutions. Although Plaintiff believes the cause of action is meritorious, each of these defense arguments (and others) would have to be overcome in order for the class claims to prevail.

B.   The Risk, Expense, Complexity and Likely Duration of Further Litigation.

One of the benefits of a class settlement is that it provides the class members with prompt relief. *Garner*, 2010 U.S. Dist. Lexis 49477 at *28. "Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Id., quoting Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 U.S. Dist. Lexis 85028, at *13 (N.D. Cal. Oct. 22, 2008).

Here, Plaintiff would need to overcome several procedural hurdles in order to obtain a favorable judgment for the class, including prevailing on his motion for class certification, defeating Defendant's motion(s) for summary judgment, winning at trial, and then defending the judgment against an appeal. Apart from uncertainties inherent in class certification and trial, if the litigation continued, the trial process itself and subsequent appeals would take years, with very substantial expenditures of time and resources by the parties and the Court, and without any guarantee of recovery for class members. The proposed settlement eliminates all

1 litigation risks, conserves the resources of the parties and the Court, and ensures that
2 the class members receive substantial compensation without further delay.

3    C.    <u>The Risk of Maintaining Class Action Status Throughout the Trial.</u>

4 Plaintiff believes the lawsuit is maintainable as a class action. However,
5 during the litigation, Defendant raised several arguments it intended to make if the
6 action were to proceed to a contested class certification motion, including but not
7 limited to the argument that individual issues of consent and expectation of privacy
8 predominate over common issues and that a class action would not be superior to
9 individual litigation. The proposed settlement avoids all potential risk relating to
10 class certification.

11   D.    <u>The Amount Offered in Settlement.</u>

12 Compared to settlements in other Privacy Act cases, class members in the
13 instant case will receive a superior recovery. There are approximately 99,884
14 potential class members to whom individual notice was mailed. When applied to
15 that number, the settlement equates to approximately $117.13 each. This figure
16 compares favorably to class action settlements in four other Privacy Act cases for
17 which information is available.

18 First, in *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW
19 (FFMx) (C.D. Cal.), the settlement involved 40,000 class members and gave them
20 the option of selecting a six-month extension of the BMW Assist basic safety plan
21 (valued by the parties at $100) or making a claim for *up to* $50 against a $300,000
22 settlement fund. *See* Notice of Motion and Unopposed Motion for Preliminary
23 Approval of Class Action Settlement, *Skuro v. BMW, supra* (Dkt. 40-5). Therefore,
24 depending on how many class members opted for a monetary recovery, the actual
25 payment amount was somewhere between the stated maximum of $50 and a
26 minimum of $7.50.

27 Second, in *Marenco v. Visa Inc.*, Case No. 10-8022 DMG (VBKx) (C.D.
28 Cal.), the court approved an $18 million settlement for a class that numbered

1  approximately 600,000 individuals.  *See* Memorandum of Points and Authorities in
2  Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement,
3  *Marenco v. Visa, supra*, at 3 (Dkt. 40-6).  Thus, the average monetary recovery in
4  *Marenco* was approximately $30.00 per class member.
5      Third, in *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF
6  (JCx) (C.D. Cal.), the case settled for $9.48 million, on behalf of a class estimated to
7  include more than 1,000,000 class members.  *See* Renewed Notice of Motion and
8  Unopposed Motion for Preliminary Approval of Class Action Settlement,
9  *Batmanghelich v. Sirius*, *supra*, at 5, 9 (Dkt. 40-7).  Thus, in *Batmanghelich*, the
10 average monetary recovery was approximately $9.48 per class member.
11     Fourth, in *Greenberg v. E-Trade Financial Corporation*, Los Angeles County
12 Superior Court, Case No. BC360152, the case settled for $7.5 million.  The number
13 of actual class members was not stated, but the class potentially could have included
14 as many as 1,000,000 customers.  *See* Notice of Motion and Motion for Preliminary
15 Approval of Class Action Settlement *etc*. and Memorandum of Points and
16 Authorities in Support Thereof, *Greenberg v. E-Trade*, *supra*, at 1, 10 (Dkt. 40-8).
17 Thus, although the monetary recovery per class member cannot be quantified with
18 precision (due to lack of information about the actual number of class members), it
19 could have been as low as $7.50.
20     Here, the proposed settlement of $11,700,000 is substantial in absolute terms
21 and, at approximately $117.13 per known class member, it compares very favorably
22 with class settlements that have been approved in similar cases.
23     E.   The Extent of Discovery Completed and the Stage of the Proceedings.
24     Discovery in this action was extensive.  The parties engaged in several rounds
25 of written discovery and Defendant produced thousands of pages of documents.
26 Depositions were taken of both Plaintiff and Defendant.  Important discovery issues
27 were presented to Judge Skomal and to this Court for resolution.  Based on the
28

1 discovery completed, Class Counsel had sufficient information from which to
2 evaluate appropriate settlement terms.  Hannink Decl. ¶¶ 4-9.

### F. The Experience and Views of Counsel.

Class counsel, the law firm of Dostart Clapp & Coveney, LLP, has been appointed as lead or co-lead class counsel in more than 50 certified class actions. Hannink Decl. ¶ 3.  Class counsel believes the settlement is fair, reasonable, and in the best interests of the class members.  Hannink Decl. ¶ 4.

### G. The Presence of a Governmental Participant.

No government entity is a party to this litigation.  However, pursuant to 28 U.S.C. § 1715, the U.S. Attorney General and the California Attorney General were notified about the settlement on August 2, 2013 (the "CAFA notice").  *See* Hannink Decl. ¶ 10 and Exs. 1-2.  No government agency has responded to the CAFA notice and the 90-day period prescribed by 28 U.S.C. §1715(d) has expired.  Hannink Decl. ¶ 10.

### H. The Reaction of the Class to the Settlement.

The "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) *citing In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y. 1994).

Here, the reaction of the class has been overwhelmingly positive.  No objections were filed, and only 48 class members opted out.  Coggeshall Decl. ¶ 13. That represents a miniscule 0.048% of the class members to whom notice was mailed.  By way of comparison, in *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor that *supported* approval of the settlement.  *See also Churchill Village, L.L.C. v. General Electric*,

1  361 F.3d 566 (9th Cir. 2003) (Ninth Circuit upheld the district court's approval of a
2  settlement involving 90,000 class members, 500 opt-outs, and 45 objections).

3      I.    <u>There Was No Collusion Between the Parties.</u>

4      The settlement was not the product of collusion. To the contrary, the
5  settlement negotiations were at all times adversarial, non-collusive and conducted at
6  arms-length. Hannink Decl. ¶ 9.

7  V.    <u>THE COURT SHOULD APPROVE SAN FRANCISCO CONSUMER
8      ACTION AS THE CY PRES RECIPIENT</u>

9      The settlement provides that any residual settlement funds resulting from
10 checks not cashed by class members will be paid to a *cy pres* recipient to be agreed
11 upon by the parties and approved by the Court. Dkt. 40-4 at 10 (Agreement, Section
12 VIII.B.). The parties have agreed to propose that the *cy pres* recipient be San
13 Francisco Consumer Action ("Consumer Action"). Consumer Action is a California
14 non-profit corporation and is qualified as a public charity under Internal Revenue
15 Code § 501(c)(3). Consumer Action focuses on protecting the rights of consumers
16 in the areas of banking and credit, housing, privacy, telecommunications, and
17 insurance. Hannink Decl. ¶ 12 and Ex. 3. Among other things, Consumer Action
18 distributes educational materials and engages in community outreach and issue-
19 focused advocacy. A more complete description of Consumer Action and its
20 activities on behalf of consumers is available at www.consumer-action.org.

21     Consumer Action has confirmed that any *cy pres* funds provided to Consumer
22 Action from this lawsuit will be earmarked to be used only for the protection of
23 California consumers' privacy rights. Hannink Decl. ¶ 12. Accordingly, the *cy pres*
24 money will be used for a purpose closely aligned with the aims of the underlying
25 statute and will benefit the interests of class members. *Six Mexican Workers v. Ariz.*
26 *Citrus Growers*, 904 F.2d 1301, 1305-08 (9th Cir. 1990).

27
28

VI. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully request that the Court grant final approval of the settlement.

Dated: November 18, 2013          DOSTART CLAPP & COVENEY, LLP

/s/ James T. Hannink
JAMES T. HANNINK
Attorneys for Plaintiff

588295.2