1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| ROBERT REED, individually and on behalf of all others similarly situated,<br><br>                                                    Plaintiff,<br><br>          vs.<br><br><br>1-800 CONTACTS, INC., a Delaware corporation, and DOES 1-50, inclusive,,<br><br>                                                    Defendant. | CASE NO. 12-cv-02359 JM (BGS)<br><br>ORDER GRANTING (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (2) MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, AND PLAINTIFF ENHANCEMENT AWARD<br><br>[Dkt. Nos. 49 and 48, respectively] |

17
18
19
20
21
22
23
24
25
26
27

          On August 15, 2012, Plaintiffs filed a class action complaint in California state court against Defendant 1-800 Contacts based on its purported violation of California Penal Code Section 630 *et seq.*  Specifically, the complaint alleged that 1-800 Contacts violated Sections 632 and 632.7 by intentionally recording confidential telephonic communications with class members without obtaining their consent.  In June 2013, the parties agreed to settle the case.  See Dkt. No. 38.   The court granted preliminary approval of the settlement on August 29, 2013.  Dkt. No. 45.  Class counsel now seeks final approval of the settlement, Dkt. No. 49, as well as attorneys' fees, litigation expenses, and a class representative enhancement award for Reed, Dkt. No. 48.  For the reasons stated below, the court GRANTS both motions.

28

## BACKGROUND

**A.  Class Allegations**

From August 2011 to September 2012, Defendant 1-800 Contacts allegedly recorded telephone calls made to and received from California residents without their consent in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* (the "Privacy Act").  Plaintiff alleges approximately 300,000 calls were recorded.  The complaint sought statutory damages on behalf of Plaintiff and other Class Members.  The Privacy Act permits civil plaintiffs to recover three times the amount of damages they suffered or $5,000, whichever is greater.  Cal. Penal Code § 637.2.  Suffering actual damages is not a prerequisite to recovery.  Id.  In June 2013, the parties agreed to settle the case.  See Dkt. No. 38.  The proposed class for settlement purposes is "[a]ll natural persons who, while present in California, participated in at least one recorded telephone call with 1-800 Contacts, Inc. between August 15, 2011 and September 10, 2012 (the 'Class Period')."

**B.  Class Notice**

Following the court's preliminary approval of the class settlement, the claims administrator, Rust Consulting, Inc. ("Rust"), mailed the class notice and claim form ("Notice") to 99,884 potential class members by standard U.S. mail on September 13, 2013.  When the USPS returned 7,410 Notices as undeliverable, Rust resent Notices to 316 forwarding addresses provided by the USPS and to 3,683 addresses Rust found through additional searches.  Rust also mailed 117 additional Notices at the request of either class members or class counsel.  Through November 15, 2013, Rust mailed an aggregate of 104,000 Notices, including those that were undeliverable and those that were resent.

Rust also published Notice on three separate occasions in the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*.  On September 13, 2013, Rust created a website, www.1800ContactsSettlement.com, where the Notice, settlement agreement, and

1   other relevant documents were made available.  Rust also established a toll-free

2   telephone number with a pre-recorded message containing pertinent information

3   regarding the request and with an option to request a copy of Notice.

4   **C.  Claim Process and Response from Class**

5        Rust created a toll-free fax number and leased a case-dedicated Post Office

6   Box to enable class members to submit their claim forms and other communications.

7   The deadline for filing claims, objecting to the settlement, or opting out was

8   November 14, 2013.  As of November 15, 2013, Rust had received 16,506 claim

9   forms.  After reviewing these claims, Rust determined that 13,665 of the received

10  claims were valid, equating to approximately 13.7% of the 99,884 potential class

11  members.  Dkt. No. 55.  In addition to these claims, Rust has also received 49

12  requests for exclusion from the class settlement, approximately .048% of the class

13  members to whom Notice was mailed.  Dkt. No. 56.  No objections to the settlement

14  or to the requested attorney's fees, litigation expenses, and enhancement award have

15  been filed with the court or received by class counsel.

16  **D.  Effective Date of Settlement, Funds Distribution, and Final Judgment**

17       In accordance with the proposed settlement terms, 1-800 Contacts transmitted

18  via wire transfer $11.7 million into an interest-bearing account administered by Rust

19  on September 3, 2013.  In the absence of objections, the date the court enters an

20  order granting final approval will be the "Effective Date" for the settlement.  Within

21  ten business days of the Effective Date, Rust will pay any attorneys' fees, litigation

22  expenses, and class representative's enhancement award granted by the court and

23  will also mail each participating class member a check representing the person's pro-

24  rata share of the Net Settlement Amount.  Provided the parties have performed all of

25  their obligations under the settlement, the parties will file a proposed judgment

26  terminating the action with prejudice within fifteen business days of the Effective

27  Date.

28

1    If any settlement checks are uncashed after 120 days, the funds will be

2    distributed to the court-approved *cy pres* recipient.  The proposed *cy pres* recipient is

3    San Francisco Consumer Action, a California non-profit organization and a public

4    charity focused on protecting the rights of consumers in the areas of banking and

5    credit, housing, privacy, telecommunications, and insurance.  Consumer Action has

6    confirmed that any *cy pres* funds provided to Consumer Action from this lawsuit

7    will be earmarked to be used only for the protection of California consumers'

8    privacy rights.

9    **MOTION FOR FINAL SETTLEMENT APPROVAL**

10   **I. Legal Standard**

11   Federal Rule of Civil Procedure ("Rule") 23(e) requires a district court's

12   approval for any "claims, issues, or defenses of a certified class" to be "settled,

13   voluntarily dismissed, or compromised."  "The initial decision to approve or reject a

14   settlement proposal is committed to the sound discretion of the trial judge."  Officers

15   for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).  When

16   reviewing the proposed settlement, the court must look at "whether the settlement is

17   fundamentally fair, adequate and reasonable."  Id.  This includes an examination and

18   balancing of multiple factors, including but not limited to:

19       the strength of the plaintiffs' case; the risk, expense, complexity, and
20       likely duration of further litigation; the risk of maintaining class action
         status throughout the trial; the amount offered in settlement; the extent of
21       discovery completed, and the stage of the proceedings; the experience and
         views of counsel; the presence of a governmental participant; and the
         reaction of the class members to the proposed settlement.
22

23   Id.  Rule 23(e)(1) requires the court to take certain steps to ensure proper

24   administration of the settlement, including "direct[ing] notice in a reasonable manner

25   to all class members who would be bound by the proposal."

26   Where "the parties reach a settlement agreement prior to class certification,

27   courts must peruse the proposed compromise to ratify both the propriety of the

28   certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938,

     952 (9th Cir. 2003).  Accordingly, where the class is certified by stipulation of the

parties for settlement purposes only, the court must nevertheless examine, and indeed give "heightened[] attention" to, the question of whether that stipulated class meets the requirements for certification under Rule 23(a) and (b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620-21 (1997).  Rule 23(a) lays out the four basic prerequisites of numerosity, commonality, typicality, and adequacy of representation.  Id. at 613.  Rule 23(b) also requires that this action fall within one of three enumerated categories of cases.  Id. at 614.

**II.  Rule 23(a) and (b) Analysis**

To certify a class under Rule 23(a), the court must find that there is (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  If these elements are met, the court must also decide whether the plaintiffs have met one of the 23(b) requirements.

In order to satisfy the numerosity requirement, the class members must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In deciding whether the numerosity requirement is met, courts must decide whether, without the formation of a class, "potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964).  Here, the numerosity requirement is met as 81,706 prospective class members were originally identified, and the claims administrator ultimately mailed Notice to 99,884 prospective class members.  See, e.g., General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980) (deciding that a class of 15 was too small and citing to various cases where class size is under 50).

To establish commonality, Rule 23(a)(2) states that there must be "questions of law or fact common to the class."  For each prospective class member, the common question is whether 1-800 Contacts violated the class members' privacy by recording telephone conversations it initiated or answered.  This common question provides the basis for the sole cause of action alleged against 1-800 Contacts.

1   Accordingly, the court concludes the element of commonality has therefore been

2   met.

3          In addition to establishing numerosity and commonality, the claims of the

4   representative parties must be typical of the claims of the entire class under Rule

5   23(a)(3).  In <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011 (9th Cir. 1998), the Ninth

6   Circuit noted that the typicality requirement embodies "permissive standards," and

7   noted that the claims need only be "reasonably co-extensive with those of absent

8   class members; they need not be substantially identical."  <u>Id.</u> at 1021.  Reed, the

9   class representative, was allegedly recorded during a telephone conversation with

10  1-800 Contacts, which is the same allegation made on behalf of the other class

11  members.  Any minor differences regarding the calls would not sufficiently change

12  the nature of the claims such that Reed's claims would not be considered reasonably

13  co-extensive with the claims of other class members.  Therefore, typicality exists.

14         The final element under Rule 23(a) requires a determination that "the

15  representative parties will fairly and adequately protect the interests of the class."

16  When considering adequacy of representation, the court must decide (1) whether the

17  named plaintiffs and their attorneys have conflicts of interest with other class

18  members, and (2) whether the named plaintiffs and counsel have vigorously

19  prosecuted the case for the entire class.  <u>Hanlon</u>, 150 F.3d at 1020.  At present, there

20  is nothing in the record indicating that Reed or his attorneys have conflicts of

21  interest with other class members.  It appears both Reed and his attorneys have

22  vigorously pursued this case and its settlement.  Accordingly, the court concludes

23  adequacy of representation has been established.

24         Having satisfied the four elements set forth in Rule 23(a), the complaint must

25  also meet one of Rule 23(b)'s requirements.  Here, Reed's allegations satisfy the

26  predominance requirement under Rule 23(b)(3), which applies when "the court finds

27  that the questions of law or fact common to class members predominate over any

28  questions affecting only individual members, and that a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy."  The Supreme Court has noted that Rule 23(b)(3)'s standard (known as the "predominance requirement") is "far more demanding" than Rule 23(a)'s commonality requirement."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 624 (1997).  The Ninth Circuit has explained that Rule 23(b)(3)'s predominance requirement is met when common issues are "sufficiently cohesive to warrant adjudication by representation."  In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953, 957 (9th Cir. 2009) (citations omitted).  Here, approximately one hundred thousand prospective class members were allegedly recorded without their consent during telephone calls with 1-800 Contacts.  Minor variations in the calls' contents, length, or other characteristics would not be dispositive over whether the Privacy Act was violated.  Requiring each member to litigate their claim separately would pose an undue burden on the courts and the parties that could easily be resolved by litigating the matter as a class action.  Therefore, predominance is met.

Additionally, class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2).  In its order preliminarily approving the settlement, the court approved the proposed forms of class notice and concluded the notice procedure met the requirements of Rule 23.  In light of the parties' indication that the court-approved notice procedure was followed by the claims administrator, the court concludes the applicable notice provisions have been met.

For these reasons, the court concludes that the stipulated class meets the requirements for certification under Rule 23(a) and (b).

## III.  Rule 23(e) Review of the Settlement

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled ... only with the court's approval."  The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Com., 688 F.2d 615, 624 (9th Cir. 1982).  Under Rule 23(e)(2), "[i]f the

1  proposal would bind class members, the court may approve it only after a hearing

2  and on finding that it is fair, reasonable, and adequate."  A number of factors guide

3  the court in making this determination, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class action
> status throughout the trial; the amount offered in settlement; the extent of
> discovery completed and the stage of the proceedings; the experience and
> views of counsel; the presence of a governmental participant; and the
> reaction of the class members to the proposed settlement.

Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012)(quoting Hanlon, 150 F.3d

at 1026-27).  However, courts should use these factors to evaluate the fairness of the

settlement as a whole, rather than assessing its individual components.  Id.

**A.  Strength of Plaintiffs' Case**

This factor is somewhat difficult to weigh insomuch as the court has not

considered any substantive briefing regarding the merits of the case.  As a result, the

court's consideration is limited to the allegations contained in the complaint and 1-

800 Contacts' answer.  The complaint alleges repeated violations of the California

Privacy Act by 1-800 Contacts based upon the alleged recording of telephone calls

with California customers without their consent.  Based upon the facts asserted,

Reed has sufficiently alleged claims against 1-800 Contacts on behalf of the class

and could potentially establish Privacy Act violations at trial if the allegations are

supported by the evidence.  In its answer, 1-800 Contacts raises several defenses to

the Privacy Act allegations.[1]  However, its defenses are largely unsubstantiated at

this point and do not appear likely to succeed in light of the well-established body of

law regarding the Privacy Act.  While Reed has asserted a reasonable claim based

---

[1]  These defenses include: (1) the telephone calls to 1-800 Contacts were not "confidential communications" under California Penal Code § 632 because the calls could not give rise to an objectively reasonable expectation that the calls would not be recorded; (2) customers consented to the recording, either expressly or impliedly; (3) the Privacy Act claim is preempted by federal laws and regulations, including the Electronic Communications Act, 18 U.S.C. §§ 2510 *et seq.*; (4) 1-800 Contacts' use of Voice over Internet Protocol technology precludes liability; and (5) an award of aggregated statutory damages would violate the Excessive Fines and Due Process provisions of the U.S. and/or California Constitutions.

1  upon a relatively straight-forward cause of action, the court cannot make any more

2  definitive evaluation of the strength of the case at this point in the litigation.

3        **B.  Risk, Expense, Complexity, and Likely Duration of Further Litigation**

4        This factor weighs heavily in favor of approving the settlement.  The parties

5  have yet to complete discovery, to submit briefing on class certification, to file any

6  dispositive motions, or to engage in any pre-trial activities.  Absent settlement, this

7  litigation promises significant further time and expense on behalf of the parties.  As

8  noted by class counsel, the proposed settlement eliminates the risks of litigation for

9  class members and ensures that they will receive significant compensation  without

10  further delay.

11        **C.  Risk of Maintaining Class Action Status Throughout the Trial**

12        While Plaintiff has yet to file a class certification motion, class counsel

13  indicates that 1-800 Contacts raised several arguments that it intended to make

14  against class certification, including the argument that individual issues of consent

15  and expectation of privacy predominate over common issues and that a class action

16  would not be superior to individual litigation.  As noted above, the court finds that

17  Plaintiff has sufficiently asserted a viable class action claim under Rule 23 for

18  purposes of approving a final settlement; however, the court has reached this

19  conclusion based solely upon the initial pleadings and without the benefit of any

20  opposition provided by 1-800 Contacts.  As a result, there is always a risk to the

21  class that the court could reach a different conclusion when considering fully-briefed

22  arguments made by 1-800 Contacts in opposition to class certification.  Therefore,

23  this factor weighs in favor of approval.

24        **D.  Amount Offered in Settlement**

25        Pursuant to the proposed settlement, the parties have created a common fund

26  of $11.7 million.  Out of that, Rust has incurred $370,211.50 in administration

27  expenses, and class counsel seeks a total award of $2,925,000 in attorneys' fees and

28  litigation expenses.  Additionally, Reed seeks a $10,000 enhancement award.  The

appropriateness of the requested attorneys' fees, litigation expenses, and Plaintiff's enhancement award is reserved for discussion below.  However, even assuming the court grants the requested amounts, the minimum net distributable amount to class members would be $8,288,719.16, which equates to a distribution of $606.56 for each valid claim.

Under the California Privacy Act, a plaintiff may bring a private action to recover three times the amount of actual damages or $5,000, whichever is greater.  Admittedly, class members will recover substantially less than $5,000 pursuant to the terms of the settlement.  However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 & n.2 (2nd Cir. 1974)).  While recovering a potentially lesser amount, class members also avoid the time and expense required to seek counsel and bring an individual lawsuit as well as the risk of failure.  In their motion seeking final settlement approval, class counsel argues the individual recovery of class members here compares favorably to the recovery of class members in other California Privacy Act cases.  See, e.g., Skuro v. BMW of North America, LLC, Case No. 10-8672 GW (FFMx) (C.D. Cal. 2012) (providing class members with the option to receive a six month extension of a safety plan valued at $100 or to make a claim for up to $50 against a $300,000 fund); Marenco v. Visa Inc., Case No. 10-8022 DMG (VBKx) (C.D. Cal.) (approving an $18,000,000 settlement for a class that numbered approximately 600,000 individuals, or about $30 per individual); Batmanghelich v. Sirius XM Radio, Inc., Case No. 09-9190 VBF (JCx) (C.D. Cal.) (approving a settlement of $9,480,000 on behalf of a class estimated to include more than 1,000,000 class member, thereby providing relief of less than $10 per class member).  Under the circumstances, the court concludes the large amount offered in settlement weighs heavily in favor of

1   approval.

2   **E.  Extent of Discovery Completed and the Stage of the Proceedings**

3   As noted above, the parties have not completed factual discovery in this

4   action; however, they have participated in significant discovery in preparation for

5   the issue of class certification.  Class counsel indicates the parties engaged in several

6   rounds of discovery and presented significant issues to the magistrate judge and this

7   court for resolution.  Based on these exchanges, class counsel contends it had

8   sufficient information from which to evaluate appropriate settlement terms for the

9   benefit of the class.  As such, this factor weighs slightly in favor of approval.

10   **F.  Experience and Views of Counsel**

11   Both parties are represented by experienced counsel that have agreed upon the

12   terms of this settlement.  The declarations of class counsel express their strong

13   confidence in the settlement terms.  Accordingly, this element favors approval.

14   **G.  Presence of a Governmental Participant**

15   Because there is no governmental participant, this factor has no relevance in

16   the court's consideration of the settlement's fairness.

17   **H.  Reaction of the Class Members to the Proposed Settlement.**

18   Pursuant to the proposed settlement, Rust mailed Notice to approximately

19   100,000 prospective class members, published Notice on three separate occasions in

20   the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*,

21   *Sacramento Bee*, and *Fresno Bee*, and created a website where the Notice was posted

22   on the internet.  Subsequently, Rust received 13,665 valid claims to participate in the

23   settlement, approximately 13.7% of the total number of prospective class members.

24   Rust indicates this percentage is higher than average in situations like this.  Of the

25   99,884 prospective class members, only 49 requested exclusion from the settlement.

26   The Notice called for any objections to be submitted no later than November 14,

27   2007.  To date, no objections to the settlement have been filed.  The lack of

28   objections and high rate of participation weigh heavily in favor of approving

1    settlement.

2    **IV. Conclusion**

3         Based on the foregoing, the court concludes the proposed settlement is fair,

4    reasonable, and adequate based upon the above factors.  There are no objections to

5    the settlement, and there is no evidence the settlement resulted from collusion

6    between the parties.  Rather, class counsel's declarations indicate the settlement

7    negotiations were at all times adversarial, non-collusive, and conducted at arms-

8    length.  Accordingly, the settlement is approved.

9                                   **ATTORNEYS' FEES**

10        The terms of the settlement agreement permitted class counsel to request an

11   award of up to 25% of the settlement award.  Accordingly, class counsel requests

12   $2,925,000 in attorneys' fees, equivalent to 25% of the total $11.7 million settlement

13   amount.  Class counsel argues this unopposed fee request is justified under the

14   percentage-of-recovery method, supported by a lodestar cross-check.

15   **I.  Legal Standard**

16        Class counsel argues that the court should use the percentage-of-recovery

17   method because courts typically award attorneys' fees this way under the common

18   fund doctrine.[2]  Class counsel quotes the following language from Six Mexican

19   Workers v. Ariz. Citrus Growers to support the use of the percentage-of-recovery

20   method: "Although statutory awards of attorneys' fees are subject to 'lodestar'

21   calculation procedures, a reasonable fee under the common fund doctrine is

22   calculated as a percentage of the recovery."  904 F.2d 1301, 1311 (9th Cir. 1990).

23   However, the court in Six Mexican Workers goes on to say "that the choice between

24   lodestar and percentage calculation depends on the circumstances, but that 'either

25   method may ... have its place in determining what would be reasonable

26

27        [2] The "common fund doctrine" provides that a "litigant or lawyer who recovers
28   a fund for the benefit of persons other than himself or his client is entitled to a
     reasonable attorneys' fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444
     U.S. 472, 478 (1980).

compensation for creating a common fund.'"  904 F.2d at 1311 (quoting Paul, Johson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)).  Relying upon Florida v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990), class counsel suggests the Ninth Circuit has recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases."  While this may be true generally, the Ninth Circuit has also indicated "state law would control whether an attorney is entitled to fees and the method of calculating such fees" when a court exercises diversity jurisdiction.  Rodriguez v. Disner, 688 F.3d 645, 653 n.6 (9th Cir. 2012); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees" from the settlement fund.).  Thus, the court should apply California law in this instance as the sole cause of action in Plaintiff's complaint is based upon the California Privacy Act.

Under California law, the primary method for determining the amount of reasonable attorneys' fees is the lodestar method.  In re Consumer Privacy Cases, 175 Cal. App. 4th 545, 556-57 (2009); Hartless v. Clorox Co., 273 F.R.D. 630, 642 (S.D. Cal. 2011).  However, it "may be appropriate in some cases, assuming the class benefit can be monetized with a reasonable degree of certainty, to 'cross-check' or adjust the lodestar in comparison to a percentage of the common fund to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation."  Id. (citations omitted). For these reasons, the court should first consider the lodestar calculation and may then cross-check the amount with the percentage-of-recovery method

**II. Discussion**

The initial lodestar amount is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Consumer Privacy, 175 Cal. App. 4th at 556.  Courts may then increase or decrease the lodestar amount by applying a positive or negative multiplier.  Id.  To determine if a multiplier of the

lodestar amount is appropriate, courts consider various factors, which may include: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award.  Id.; Graham v. Daimler Chrysler Corp., 34 Cal. 4th 553, 579 (2004).  The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  Id.

Class counsel has provided the following information to support its request of $2,925,000 in attorneys' fees within the lodestar method.

| Timekeeper | Title | Hours | Prevailing Market Rate | Lodestar |
|---|---|---|---|---|
| James F. Clapp | Partner | 489.4 | $650 | $318,110 |
| James T. Hannink | Sr.  Counsel | 524.3 | $650 | $340,795 |
| Zach P. Dostart | Associate | 794.6 | $400 | $317,840 |
| Teri L. Zaayer | Sr. Paralegal | 160.8 | $150 | $24,120 |
| Doneca M. Louden | Paralegal | 246.7 | $125 | $30,837 |
| TOTAL | | 2,215.8 | | $1,031,702 |

Class counsel contends these hourly rates are commensurate with the rates of similarly experienced class action attorneys in the Southern District of California, and further notes these rates are generally lower than the hourly rates for attorneys with comparable experience under the Laffey Matrix, a guide used by some courts to determine reasonable attorneys' fees.  Under the current Laffey Matrix, a reasonable rate for an attorney with more than 20 years of experience, such as Clapp and Hannink, is $753, and a reasonable rate for an attorney with 5 years experience, such as Dostart, is $383.  While Dostart's $400 hourly rate is higher than the rate in the Laffey Matrix, Plaintiff's counsel points out that the $650 hourly rate for Clapp and Hannink is substantially lower.

Under the circumstances, the lodestar amount is reasonable considering the

amount of time spent and the experience of the attorneys.  The hourly rates seem reasonable, and the Laffey Matrix lends the rates further credibility.  On the whole, Plaintiff's counsel achieved a successful result with a substantial settlement award. The class members who made claims will receive a substantial check in the mail compared to class members' recovery in many other class actions.  This is especially true considering the majority of class members likely had no tangible loss resulting from the impermissible recording of their telephone conversations by 1-800 Contacts.  Notably, there have been no objections to the requested amount.

Noting the difference between the requested $2,925,000 in attorneys' fees and the $1,031,702 lodestar value for the time spent by class counsel on this case, class counsel contends the increase reflects a reasonable multiplier of 2.8.  Notably, a multiplier of 2.8 would results in an award of $2,888,765.60 whereas a multiplier of 2.9 equals $2,991,935.80.  Based on these numbers, it seems class counsel actually requests a multiplier of  slightly more than 2.9.  Class counsel relies upon federal law to justify the requested multiplier, noting the Ninth Circuit allows multipliers in class action settlements to range from 0.6 to 19.6, with most ranging from 1 to 4. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 n.6 (9th Cir. 2002).  Class counsel undertook this litigation on a purely contingent basis and reached a very favorable settlement after investing thousands of hours against a well-funded and determined defendant with top-flight defense counsel.  For these reasons, class counsel contends a multiplier of 2.8 is reasonable.

Under California law, the court "may increase or decrease [the lodestar] amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Lealao v. Beneficial Cal., Inc., 82 Cal. App. 4th 19, 26 (2000); Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001).  In some instances, a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis.  Lealao, 82 Cal. App.

4th at 49-50.  While California courts generally use the lodestar method, a percentage recovery from a common fund approach may be used to cross-check the lodestar calculation.  <u>Consumer Privacy</u>, 175 Cal. App. 4th at 556-57.   Like the Ninth Circuit, California courts typically calculate 25% of the common fund as the benchmark for a reasonable fee award in common fund cases.  <u>Id.</u>; <u>In re Bluetooth Headset Products Liability Litigation</u>, 654 F.3d 935, 942 (9th Cir. 2011).

Considering these factors, the multiplier of 2.9 requested by class counsel does not appear unreasonable.  While the issues were not particularly novel or complex, class counsel achieved a very successful settlement that amounts to a relatively large recovery for individual class members when compared to many other class recoveries.  Absent settlement, it is likely this action would have been hotly contested and lengthy.  As noted previously, 1-800 Contacts raised numerous defenses to the complaint, and the record suggests 1-800 Contacts intended to oppose class counsel at every step in this litigation.  Additionally, this action was taken on a contingency basis by well-qualified class counsel that engaged in contentious discovery litigation and lengthy settlement negotiations in order to reach settlement.  Moreover, there were no objections to the amount requested, the amount satisfies the percentage-of-recovery cross-check, and the Ninth Circuit frequently approves even higher multipliers than this one.[3]  See <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1051 n. 6 and Appendix (citing cases utilizing a range of multipliers "of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range").  Accordingly, class counsel's request for attorneys' fees is granted.

---

[3] The court notes that it is not making a determination that the requested amount reflects an appropriate average hourly rate for class counsel's various timekeepers or that the award reflects the reasonable market value for class counsel in this type of case. Under these specific circumstances, however, the results achieved and the efforts of qualified counsel in reaching such a beneficial settlement for class members warrant significant weight in the court's consideration of the requested multiplier.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LITIGATION EXPENSES**

Additionally, class counsel requests $106,111.81 for litigation expenses incurred while pursuing this case.  The request is $46,888.19 less than the $150,000 in litigation expenses allowed under the terms of the settlement agreement.  Class counsel provided the following categorized list of litigation expenses and amounts:

| EXPENSE | AMOUNT |
|---|---|
| Service/Messenger/Filing Fees | $7,045.97 |
| Copy Charges | $916.20 |
| Deposition Expense | $1,463.95 |
| Express Mail | $114.39 |
| Fax | $45.00 |
| Parking / Mileage | $158.25 |
| Postage | $19.20 |
| Professional Fees | $92,311.77 |
| Legal Research | $2,835.60 |
| Travel | $1,201.48 |
| **TOTAL EXPENSES** | **$106,111.81** |

Having reviewed this list, the requested litigation expenses appear reasonable and proportionate to the attorneys' fees requested.  See Clark v. Am. Residential Servs. LLC, 175 Cal. App. 4th 785, 807 (2009)(allowing costs, but not in an amount that exceeds the amount allowed by the settlement agreement).  Notably, there are no objections to the requested amount.  Accordingly, class counsel's request for litigation expenses is granted.

**PLAINTIFF'S ENHANCEMENT AWARD**

Additionally, Reed seeks a $10,000 enhancement award for his service as named plaintiff in this action.  Within the terms of the settlement agreement, 1-800 Contacts agreed that it would not oppose an enhancement award of up to $10,000.

1    In assessing the reasonableness of an enhancement or incentive award,

2  California courts often apply the five-factor test set forth in <u>Van Vranken v. Atl.</u>

3  <u>Richfield Co.</u>, 901 F. Supp. 294, 299 (N. D. Cal. 1995), which analyzes: (1) the risk

4  to the class representative in commencing a class action, both financial and

5  otherwise; (2) the notoriety and personal difficulties encountered by the class

6  representative; (3) the amount of time and effort spent by the class representative;

7  (4) the duration of the litigation; and (5) the personal benefit, or lack thereof,

8  enjoyed by the class representative as a result of the litigation.  <u>See</u> <u>In re Cellphone</u>

9  <u>Fee Termination Cases</u>, 186 Cal. App. 4th 1380, 1394-95 (2010); <u>Clark v. Am.</u>

10  <u>Residential Servs. LLC</u>, 175 Cal. App. 4th 785, 805 (2009).

11    Class counsel asserts Reed provided invaluable assistance initially by

12  explaining his telephone interactions with 1-800 Contacts and by assisting class

13  counsel in understanding 1-800 Contacts' telephone ordering system.  During the

14  lawsuit, class counsel notes Reed reviewed documents, responded to discovery, and

15  sat for a full-day deposition.  Significantly, there is no opposition to the requested

16  enhancement award by other class members.  As it appears Reed devoted significant

17  time to pursuing this action and his efforts resulted in a significant settlement award

18  for class members, the court finds a $10,000 enhancement award reasonable under

19  the circumstances.  <u>See</u> <u>In re Cellphone Fee Termination Cases</u>, 186 Cal. App. 4th at

20  1395 (upholding $10,000 incentive fee award).

21                                        **CONCLUSION**

22    For the foregoing reasons, IT IS HEREBY ORDERED:

23    1.    The court has subject matter jurisdiction over this action pursuant to the

24  Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

25    2.    In accordance with Fed. R. Civ. P. 23(b)(3), the court reaffirms the

26  following findings:

27  / / /

28  / / /

1     a.  The class is so numerous that joinder is impracticable;

2     b.  There are questions of law and fact that are common to all class

3 members, which questions predominate over individual issues;

4     c.  Plaintiff's claims are typical of the claims of the class;

5     d.  Plaintiff and class counsel have and will fairly and adequately

6 protect the interests of the class; and

7     e.  A class action is superior to other available methods for the fair

8 and efficient adjudication of this controversy.

9  3.  The court finds that class notice was properly mailed and published in

10 accordance with the settlement agreement, the preliminary approval order, and the

11 modification order.  The court further finds that the notice procedure implemented in

12 this action provides for the best notice practicable under the circumstances, and that

13 such notice procedure satisfies Fed. R. Civ. P. 23(c)(2)(B) and the requirements of

14 due process.

15  4.  The court finds that, having been properly notified of the settlement, no

16 class members have objected to any aspect of the settlement (including the proposed

17 award of attorneys' fees, litigation expenses, and an enhancement to Plaintiff).

18  5.  The court finds that 49 class members have opted out, whose names are

19 listed on Exhibit A hereto.  The 49 individuals who opted out are excluded from the

20 settlement and will not share in the settlement and will not be bound by the

21 settlement's release.

22  6.  The court finds that the CAFA notice required by 28 U.S.C. § 1715 was

23 served on August 3, 2013 on the United States Attorney General and the California

24 Attorney General.  Neither the United States Attorney General nor the California

25 Attorney General has objected to, or otherwise commented on, the settlement.

26 / / /

27 / / /

28 / / /

7.      The court hereby grants final approval of the settlement.  After considering all pertinent factors, the court finds that the settlement memorialized in the settlement agreement is fair, reasonable, and in the best interests of the class members.  In evaluating the settlement, the court has considered the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement.

8.      The court grants class counsel's motion for an award of attorneys' fees in the amount of $2,925,000, plus reimbursement of litigation expenses in the amount of $106,111.81.  The court finds that the attorneys' fees are justified in light of the novelty and complexity of the issues presented, the skill that class counsel exhibited in representing the interests of the class, the hours that class counsel expended in this matter, the fact that class counsel handled the matter on a contingency basis, as well as awards in similar cases.

9.      The court grants the request for a service payment to the named Plaintiff, Robert Reed, in the amount of $10,000.  The court finds that this payment is justified in light of the time that Reed spent in representing the interests of the class.

10.      The court approves the proposed *cy pres* recipient, San Francisco Consumer Action.  The claims administrator is ordered to pay any *cy pres* amounts to San Francisco Consumer Action pursuant to the terms of the settlement agreement.

11.      The court shall retain continuing jurisdiction over the parties and the class members to effectuate and ensure compliance with the settlement agreement.

/ / /

/ / /

12.     Pursuant to Section IX of the settlement agreement, the parties shall file a proposed judgment terminating the action with prejudice within fifteen (15) court days following the effective date, provided that the parties have performed all of their obligations under the agreement.

IT IS SO ORDERED.


DATED:  January 2, 2014

_____
Hon. Jeffrey T. Miller
United States District Judge

# **EXHIBIT A**

<u>List of the 49 Class Members Opting Out of the Class</u>

| | |
|---|---|
| 1. Dennia Palmer | 26. Kathryn J. Menteer |
| 2. Madhuri Parson | 27. Karen Foster |
| 3. Debra Jamin Heller | 28. Marilyn Harper |
| 4. Janne La | 29. Sally G. Martinez |
| 5. Anu Sharma | 30. John Watson |
| 6. Jenny Luc | 31. Jared Lucas |
| 7. Maria Silvana Borras | 32. Traci Manning |
| 8. Barbara Riise | 33. Victoria Walker-Lynch |
| 9. Mirian Lopez | 34. Saumya Ratnayake |
| 10. Joanne E. Picker | 35. Melyssa Hernandez |
| 11. Jennifer J. Goodsell | 36. Robert L. Brace |
| 12. Jared Koett | 37. Karina Djalilova |
| 13. Sally La | 38. Andrew Alexander |
| 14. Margaret Roxanne Stevens | 39. Valentina Valencia |
| 15. F. Kelly Miyata | 40. Elizabeth M. Diaz |
| 16. Martha Miladi | 41. Mayra A. Alcala Rodriguez |
| 17. Helen Blythe | 42. Sandra Crosse |
| 18. Janet Glikbarg | 43. Kendra Renee Toelle |
| 19. Diana L. Flittner | 44. Diana A. Lopez |
| 20. Raegan Delgado | 45. Victoria Buchanan |
| 21. Teresa Nguyen | 46. Abda Linneth Olguin |
| 22. Dustin Cahill | 47. Lynda Hashman |
| 23. Tony Endsley | 48. Carol L. Weinfeld |
| 24. Mary Endsley | 49. Marina Guillen |
| 25. Johanna Moore | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28